UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * Criminal No. 23-cr-323-DKC |
| | * |
| MICHAEL VERZALENO, JR, ET Al. | * |
| Defendants | * |
| | * |
| | * |

**DEFENDANTS' JOINT MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED EXPERT TESTIMONY OF IRS SPECIAL AGENT RACHEL SOLOMON**

Defendants Michael G. Verzaleno, Jr., Michael G. Verzaleno, Sr., and Susan P. Carrano (the "Defendants"), by and through their undersigned counsel, respectfully request that the Court enter an order excluding the government's proposed expert testimony of IRS Special Agent Rachel Solomon, pursuant to Federal Rules of Evidence 702, 704, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

I.  **INTRODUCTION**

On May 20, 2024, the government filed a notice of expert testimony (the "Notice"), stating that it intends to call IRS Special Agent Rachel Solomon to opine as an expert in "the fields of accounting and financial fraud investigations." Gov'ts Notice of Expert Witness Test. Pursuant to FRE 702 and 703 ¶1, Dkt. 79. The thirteen-paragraph Notice spends four paragraphs on Special Agent Solomon's background before using the remaining nine paragraphs to summarize Kearny Steel Container Corporation ("KSC") documents, assert conclusory opinions unsupported by any analysis, and offer legal opinions about the Defendants' states of mind and the ultimate question of whether fraud occurred. Rather than calling a KSC fact witness to explain the KSC records at issue in this case, the government adopts a pernicious tactic: using Special Agent Solomon to put expert gloss on their theory of the case to give it unwarranted credence with the jury. This attempt to pass off the government's theory as expert testimony violates the Federal Rules of Evidence and settled case precedent. Expert testimony is proper

1

only where it is the product of reliable methods and helps the jury understand a relevant issue. Special Agent Solomon's proffered expert testimony accomplishes neither and must therefore be excluded. *First,* Special Agent Solomon has failed to identify *any* methodology (let alone a reliable methodology) upon which she reaches her conclusions. *Second,* Special Agent Solomon's expected testimony consists largely of narrative summaries of internal KSC documents and recitations of narrative facts. These narrations summarize simple business records and show no specialized expert knowledge that will "help the trier of fact to understand the evidence." Fed. R. Evid. 702(a). *Third*, the government is trying to use Special Agent Solomon's opinions to prove the ultimate issue in the case: the Defendants' intent and whether fraud was committed. Special Agent Solomon's "opinions" are actually nothing more than impermissible legal conclusions about the Defendants' states of mind, and therefore, do not assist the trier of fact but instead invade the province of the jury. Accordingly, Special Agent Solomon's "expert" testimony should be excluded.

## II. LEGAL STANDARD

Under Rule 702, the federal courts "act as gatekeepers to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (quoting *Daubert*, 509 U.S. at 588). Rule 702 additionally sets out a framework for carrying out the Court's gatekeeping responsibility and dictates that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" but only if four additional conditions are met. Fed. R. Evid. 702.

*First*, the opinion must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see Donalds v. Ethicon, Inc.,* No. 22-1737, 2023 WL 2446703, at *3 (4th Cir. Mar. 10, 2023). *Second*, the testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b); *see Donalds*, 2023 WL 2446703, at *3. *Third*, the testimony must be "the product of reliable principles [or] methods." Fed. R. Evid. 702(c); *see Donalds*, 2023 WL 2446703, at *3. *Fourth*, the court must determine whether the expert has reliably

"appli[ed] the principles and methods to the facts of the case." Fed. R. Evid. 702(d); *see Donalds*, 2023 WL 2446703, at *3. As to each of these elements, the proponent of the expert testimony—here, the government—must establish by a "preponderance of proof" that the proffered expert and her testimony meet the requirements of Rule 702. *Cooper*, 259 F.3d at 199 (citation omitted).

An expert may testify only to matters within her expertise. "To qualify as an expert under Fed. R. Evid. 702, a witness must have sufficient qualifications in the form of knowledge, skills, and training. Additionally, the court must find that the testimony of the expert will be reliable and that the testimony will 'fit,' that is, assist the trier of fact." *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 155 (3d Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741–43 (3d Cir.1994)). "Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014) (internal citations and quotation marks omitted). Put simply, an expert does not have "*carte blanche* to opine on every issue in the case." *Davis v. Carroll*, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013).

Moreover, an expert may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994)). This includes expert testimony concerning a defendant's mental state. Indeed, the Federal Rules of Evidence explicitly prohibits such testimony: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

### III. ARGUMENT

    **A. Special Agent Solomon's Proposed Testimony Is Devoid of Any Methodology, Is Unreliable, and Must Be Excluded.**

3

Special Agent Solomon's testimony relies on a summary overview of KSC's business records to support her conclusory opinion that those documents "are consistent with the concealment of a false billing scheme intended to defraud C&A." Dkt. 79 ¶13. But Special Agent Solomon provides no methodology, describes no analysis, and offers no explanation as to why her review of those documents supports that conclusion. Courts in this Circuit have routinely found that expert testimony is unreliable where the opinion "is connected to existing data only by the *ipse dixit* of the expert." *McCoy v. Biomet Orthopedics, LLC*, 2021 WL 252556, at *11 (D. Md. Jan. 25, 2021) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Indeed, expert testimony is routinely excluded where "there is 'simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *Pugh v. Louisville Ladder, Inc.,* 361 F. App'x 448, 454 n.4 (4th Cir. 2010)). For example, in *Donalds v. Ethicon*, the court excluded a physician's proffered expert opinion that included a recitation of the materials he reviewed and his opinion based on those materials, because it "[did] not show how or why he reached his causation opinions" and that "[u]nder the Rules, this omission renders his report deficient." 2022 WL 2159836, at *4 (D. Md. June 15, 2022), *aff'd*, 2023 WL 2446703 (4th Cir. Mar. 10, 2023). Without information showing how [the expert] applied his expertise to reach his opinions, those opinions are speculative, unreliable, and inadmissible." *Id.*[1]

As in *Donalds* and the litany of similar cases, Special Agent Solomon's expert testimony must be excluded because her Notice fails to provide any methodology or explanation for how

---

[1] Numerous other courts have reached the same conclusion in cases where expert testimony suffered from similar defects as Special Agent Solomon's does here. *See McCoy*, 2021 WL 252556, at *16 (expert's observations based on his experience as an orthopedic surgeon and his treatment of the plaintiff did "not rise to the level of reliable methodology under Rule 702" as there was "simply too great an analytical gap between the data and the opinion proffered"); *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 322-324 (D. Md. 2017) (excluding expert testimony where the "report does not explain how he arrived at his conclusions (his methodology) or how he 'reliably applied' his experience to the facts of this case"); *Mathias v. Michael Eaves Shoemaker*, 2017 WL 3592457, at *2, 3 (D. Md. Aug. 21, 2017) (excluding expert testimony where the expert was "an experienced and otherwise qualified crash reconstruction expert" because his opinions were "not the product of any discernible methodology, but rest solely on his own, *ipse dixit* opinions").

she reached her opinions. For example, the Notice states that "Solomon will opine that the separate and unique billing process used to create most of the invoices that KSC sent to C&A during the relevant period is consistent with the concealment of a false billing scheme intended to defraud C&A." Dkt. 79 ¶8. That opinion is supported, however, by only "Solomon's review of the foregoing records and accounting and bookkeeping procedures." *Id.* ¶6. The Notice provides no explanation for how Special Agent Solomon's review of KSC business records has led her to identify the "routine process" for customer orders. *Id.* ¶8. KSC is a longstanding family business with numerous customers. For a business of KSC's size and with its diverse customer base, it is common to use differing billing practices tailored to specific customer needs and preference. The Notice lacks any detail on which other customers' invoicing and delivery records Special Agent Solomon examined in order to identify the purportedly "routine process" KSC used for orders. The Notice also fails to include any methodology Special Agent Solomon used to identify this "routine process." Further, the Notices does not include how Special Agent Solomon determined that this "routine process" allegedly differed for the orders C&A placed. *Id.* ¶8. Finally—and perhaps most crucially—there is no explanation for how these allegedly different processes are "consistent with the concealment of a false billing scheme…" *Id.*

Special Agent Solomon's leap from supposedly observing different practices in customer orders to concluding that KSC is engaged in fraudulent billing is classic *ipse dixit*. The Notice fails to explain any methodology or any mode of comparison that would lead to the conclusion that these differences in customer ordering should be attributed to fraudulent billing rather than legitimate business reasons. Indeed, Special Agent Solomon fails to cite any testimony from any KSC witness explaining these practices or any prior fraudulent experience she has encountered, but she instead relies simply on her review of records to reach her conclusion. This is precisely the type of "analytical gap between the data and the opinion proffered" that must be excluded. *See McCoy,* 2021 WL 252556, at *11.

The Notice also states that Special Agent Solomon will opine that "purchase orders and bills of lading were fraudulently created, filed, and maintained in KSC's files to create the

5

pretense that records existed to support those false billings." Dkt. 79 ¶8. These opinions are also purportedly "[b]ased on SA Solomon's review of the foregoing records and accounting and bookkeeping procedures." *Id.* ¶6. But crucially, the Notice is missing any explanation or support for *how* Special Agent Solomon's review of those materials led her to conclude that certain records were "fraudulently created, filed, and maintained." *Id.* ¶8. Instead, these opinions rest again solely on the Special Agent's own *ipse dixit*—because she says, therefore it is. *See Mathias v. Michael Eaves Shoemaker*, 2017 WL 3592457, at * 3 (D. Md. Aug. 21, 2017) (excluding proposed expert because "nowhere does [the proposed expert] explain how he arrived at his opinions based on the facts he reviewed in this case").

Finally, the Notice states that "SA Solomon will also testify that she identified a second KSC ledger that tracked when C&A paid a false invoice." Dkt. 79 ¶12. This opinion is apparently based on a "comparison" Special Agent Solomon purportedly made between a "Line of Credit NatPack to KSC" ledger and "QuickBooks Customer Open Balance sheet for C&A."*Id.* ¶12. The Notice does not, however, explain what specifically Special Agent Solomon compared across the two documents, what methodology she used to compare the two documents, what her comparison found, or how her comparison supports her conclusion that one ledger tracked false invoices. In short, her approach is completely devoid of *any* analysis or rigor that expert testimony requires. *See McCoy*, 2021 WL 252556, at *11. Indeed, this is simply the government's theory of the case masquerading as expert opinion.

### B. Special Agent Solomon May Not Offer Testimony on Legal Issues Including Defendants' Intent or Whether Fraud Occurred.

Special Agent Solomon's proposed testimony must be excluded for two additional reasons: (1) it is replete with legal conclusions on Defendants' states of mind—a matter of law which courts have routinely held is inadmissible; and (2) it includes opinions as to the ultimate question of whether fraud occurred, which is solely within the province of the jury.

6

### i. Special Agent Solomon's Proposed Testimony on Defendants' Intent Is Inadmissible.

The Federal Rules of Evidence expressly forbid an expert from testifying as to a defendant's state of mind or intent. Fed. R. Evid. 704(b). Courts within this District and nationwide have consistently excluded expert testimony that attempts to circumvent this rule. *See Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 518 (S.D. W. Va. 2014) *as amended* (Oct. 29, 2014) (holding that a "party's knowledge, state of mind, or other matters related to…conduct and ethics are not appropriate subjects of expert testimony"); *United States v. Chance*, 2011 WL 5826675, at *3 (D. Md. Nov. 17, 2011) *aff'd*, 496 F. App'x 302 (4th Cir. 2012) (An "expert may not speculate as to a defendant's state of mind."); *Safeway, Inc. v. Sugarloaf P'ship, LLC,* 423 F. Supp. 2d 531, 538-539 (D. Md. 2006) (holding that an expert cannot testify as to "the intent of the parties"). These courts have properly concluded that "expert testimony concerning state of mind, intent, or purpose is unreliable because it is not grounded in analytically sound principles or methods." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2023 WL 3517923, at *3 (D.S.C. May 2, 2023).

Inferences about the intent or motives of parties also "lie outside the bounds of expert testimony" because they "have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546-547 (S.D.N.Y. 2004); *see also In re Fosamax Products Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (expert witness who "conceded at the hearing that her regulatory expertise does not give her the ability to read minds" precluded from testifying to the "knowledge, motivations, intent, state of mind, or purposes" of others). As the Federal Rules of Evidence make plain, "the trier of fact alone" must decide "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." *See* Fed. R. Evid. 704(b).

Special Agent Solomon's proffered expert testimony flatly violates Rule 704(b) because it is replete with impermissible speculation masquerading as expert opinion regarding the Defendants' mental states. *First,* the Notice states that the Special Agent will opine that:

- "[T]he separate and unique billing process used to create most of the invoices that KSC sent to C&A during the relevant period is consistent with the ***concealment*** of a false billing scheme ***intended to defraud*** C&A." Dkt. 79 ¶6. (emphasis added).
- "[P]urchase orders and bills of lading were fraudulently created, filed, and maintained in KSC's files ***to create the pretense*** that records existed to support those false billings." *Id.* ¶8. (emphasis added).
- "[I]nvoices that KSC sent to C&A…[were] ***consistent with the concealment of a false billing scheme intended to defraud*** C&A." *Id.* ¶¶8,13. (emphasis added).
- Defendants "***intended to defraud*** C&A." *Id.* ¶10. (emphasis added).

These opinions are all statements about intent and are plainly forbidden by Rule 704(b). "Intent is a question for the trier of fact that does not require expert testimony." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2023 WL 3517923, at *3. The government's effort to use Special Agent Solomon to interpret these notations is not expert testimony but rather a sweeping assertion about Defendant's intent. *See United States v. Diaz*, 2006 WL 2699042, at *4 (N.D. Cal. Sept. 19, 2006) (excluding part of agent expert's opinion regarding the meaning of a particular phrase because "[h]e only pieced together an understanding based on other investigatory facts.…context alone is an insufficient basis on which to support his interpretation of the word."); *United States v. Hawkins*, 934 F.3d 1251, 1261 (11th Cir. 2019) (holding that allowance of agent expert's testimony was plain error where agent "'interpreted' unambiguous language, mixed expert opinion with fact testimony, and synthesized the trial evidence for the jury [and] [h]is testimony strayed into speculation and unfettered, wholesale interpretation of the evidence."). An expert is not a mind reader; she has no knowledge of why various other people did what they did. On an issue where intent is the central issue, allowing an expert to opine on the mental states of people whom the expert has never met raises a grave danger of unfair

8

prejudice and improperly invades the province of the jury. *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 268 (S.D.N.Y. 2010) ("Determining what motivated a particular person or entity is generally not an appropriate subject matter for expert testimony."); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (excluding testimony based on an expert witness's "secondhand knowledge" through documents).

*Second*, Special Agent Solomon also opines that invoices marked as "real" or "Gene paid" signify which invoices Defendants meant to identify as false. Dkt. 79 ¶¶10, 11. These are impermissible opinions interpreting the Defendants' intent and purpose that Special Agent Solomon could not possibly know and therefore, are inadmissible as expert testimony. *See In re Rezulin*, 309 F.Supp.2d at 551 (S.D.N.Y. 2004) (excluding expert testimony that did "no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant's] conduct"); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (excluding expert's opinion about defendant's motive or purpose); *United States v. Haines*, 803 F.3d 713, 734 (5th Cir. 2015) (finding testimony was admitted in error where agent "offere[ed] his own interpretation of language that was well within the province of the jury to interpret" and "ventured into speculation, usurping the jury's function, which is to draw its own inferences from the evidence presented"). The government may introduce into evidence the documents with these notations and argue to the jury their meaning, but Special Agent Solomon may not testify to her interpretation of their meaning under the guise of expert opinion.

Using Special Agent Solomon to provide testimony about those notations warrants additional scrutiny, because when "the prosecution uses a case agent as an expert, there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's sweeping conclusions about [defendant's] activities, deviating

9

from the strictures of Rules 403 and 702." *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (when "a case agent also functions as an expert for the government, the government confers upon him the aura of special reliability and trustworthiness surrounding expert testimony, which ought to caution its use"). Special Agent Solomon purports to offer a factual definition of the terms "real" or "Gene paid." But an expert is in no position to offer an interpretation of these terms — they are unique to KSC and these documents and are not standard accounting terms deciphered with expert knowledge.[2]

In sum, the Federal Rules of Evidence and case precedent are clear. The government cannot designate a case agent as an expert to "spoon-fe[e]d…the government's theory of the case to the jury," *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013). Nor can it "put an expert gloss on a conclusion the jury should draw" themselves. *United States v. York,* 572 F.3d 415, 423 (7th Cir. 2009). Accordingly, Special Agent Solomon's testimony should be excluded.

### ii. Special Agent Solomon's Proposed Testimony that Defendants Committed Fraud Is Inadmissible.

To prove wire fraud, the government must prove beyond a reasonable doubt that the Defendants knowingly and willfully participated in a scheme with intent to defraud. 18 U.S.C.

---

[2] Unlike a narcotics case where an expert witness experienced in the drug trade may be helpful to decode the vernacular of drug traffickers, there is no specialized expertise needed to decrypt KSC's business records or the handwritten notations on an invoice or open balance sheet. Courts have allowed law enforcement officers with extensive drug investigation experience to give limited expert testimony on the meaning of drug-related code words because "drug traffickers' jargon is a specialized body of knowledge." *United States v. Wilson*, 484 F.3d 267, 276 (4th Cir. 2007); *see also United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997) (noting that drug traffickers may to refer their product as "three pairs of boots," "pianos," "the boyfriend," "briefs" and "motions"). But no such jargon requiring a specialized body of knowledge exists in this case. Special Agent Solomon's experience "conducting tax audits" or using nonspecific "forensic accounting training" to investigate a broad range of financial crimes (Dkt. 79 at ¶¶3-4) does not imbue her with any specialized knowledge to interpret KSC's business records or shorthand notations.

§ 1343. As has been discussed, it is well settled that an expert may not opine on a defendant's culpable state of mind, and therefore, an expert may not opine on the legal conclusion of whether an act constitutes fraud. *See United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) (noting that defendant's intent to defraud "is not an appropriate subject for expert testimony"); *United States v. Booth*, 309 F.3d 566, 573 (9th Cir. 2002) (affirming district court's refusal to admit expert testimony regarding defendant's mental state in fraud case); *United States v. Valle*, 72 F.3d 210, 215-16 (1st Cir. 1995) ("Rule 704(b) prohibits all direct expert testimony concerning a criminal defendant's intent, regardless of the witness's field of expertise, so long as intent is an element of the crime charged.").

Beyond her impermissible opinions regarding defendants' alleged intent cited above, Special Agent Solomon further offers impermissible opinions about the ultimate conclusion of whether the Defendants committed fraud:

- KSC used "accounting and bookkeeping practices" to **"to conceal *a false billing scheme* used to *defraud* Citrus and Allied.***"** Dkt. 79 ¶1 (emphasis added).
- "[T]he separate and unique billing process …[was] ***intended to defraud*** C&A." *Id.* ¶8. (emphasis added).
- "[P]urchase orders and bills of lading were ***fraudulently created***, filed, and maintained in KSC's files …[to] support ***those false billings.***" *Id.* (emphasis added).
- "[I]nvoices that KSC sent to C&A…[were] ***consistent with the concealment of a false billing scheme intended to defraud*** C&A." *Id.* ¶¶8, 13. (emphasis added).
- "***False*** invoices…[were] supported by ***fraudulently created*** purchase orders and bills of lading." *Id.*, ¶10. (emphasis added).
- KSC "fil[ed] ***fraudulent*** supporting documentation." *Id.* ¶13. (emphasis added).
- Defendants "***intended to defraud*** C&A." *Id.* (emphasis added).
- **"[F]alse** invoices…[were] determined to be ***fraudulently created***." *Id.* ¶11. (emphasis added).
- "[T]he second ledger only tracked the payments for ***false invoices.***" *Id.* ¶12. (emphasis added).

Special Agent Solomon's expert opinions state unequivocally that the Defendants committed fraud and seek to answer for the jury the ultimate question of whether the Defendants are guilty of the charged crimes. Such opinions are patently inadmissible. As the Fourth Circuit

11

has explained, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). *See also Int'l Game Tech v. Andrews*, 2006 WL 8443958, at *7 (D.S.C. June 1, 2006) ("Rules 702 and 704 of the Federal Rules of Evidence prohibit experts from offering opinions about legal issues that are outcome determinative."); *United States ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308, 320 (4th Cir. 2012) (affirming trial court's preclusion of expert's testimony concerning "fraud indicators" because "[f]raud requires proof of things that no accountant has").[3] "This intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent." *United States v. Cooper*, 286 F. Supp. 2d 1283, 1295 (D. Kan. 2003) (quoting *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000) (internal quotations omitted)). Indeed, an expert may not "take away from the jury its responsibility to determine the facts and, ultimately, whether the defendants are liable." *Sprint Nextel Corp. v. Simple Cell, Inc.*, 2016 WL 524279, at *5 (D. Md. Feb. 10, 2016). Special Agent Solomon's opinions seek to do just that.

### C. Special Agent Solomon's Factual Narratives and Summaries of KSC Documents Are Not Proper Subjects of Expert Testimony.

Finally, Special Agent Solomon's expert testimony that would do nothing more than summarize KSC documents should be excluded. Expert testimony requires "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in

---

[3] Other courts have reached the same conclusion. *See United States v. Gallion*, 257 F.R.D. 141, 156 (E.D. Ky. 2009) ("use of the terms 'fraud,' 'fraudulent,' 'defraud,' etc., would be excluded under Rule 704 … because intent to defraud is a necessary element in the crimes charged, and opinions using these terms go beyond merely suggesting the ultimate conclusion"); *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *4-5 (N.D. Ill. May 26, 2005) ("the issues of whether Defendants committed fraud and subjectively intended to commit fraud are material to establishing Defendants' potential legal liability … Abundant caselaw confirms the impropriety of such purported expert testimony.") (collecting cases).

issue." Fed. R. Evid. 702 (a). It is well-settled that "[e]xpert testimony which merely regurgitates factual information [] is better presented directly to the jury rather than through the testimony of an expert witness." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013); *see also In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig.*, 2021 WL 781682, at *13 (D. Md. Mar. 1, 2021) ("An expert cannot 'be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'") (quoting *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)).

According to the Notice, Special Agent Solomon's expert testimony will largely consist of narrative descriptions based on her "review" of certain KSC documents. Dkt. 79 ¶¶6-12. As discussed in Section III.A., *supra*, Special Agent Solomon has failed to support her opinions with any methods of analysis—they are merely baseless assertions. In addition, the Special Agent's testimony will also consist of summaries of KSC documents that are untethered to any scientific analysis that would put them within the proper ambit of an expert witness. For example, paragraphs 6 and 7 of the Notice merely recount the contents and colors of a purchase order pad. Likewise, Special Agent Solomon's proposed testimony that the "Open Balance included the invoice number, the date of delivery, and the amount billed for the drums" is simply a recitation of the contents of that document. Dkt. 79 ¶9. And Special Agent Solomon's testimony about the purported "second ledger" similarly lists only its contents. Dkt. 79 ¶12. These statements are not expert opinions, but rather "regurgitat[ion] of factual information that is better presented direct to the jury." *In re C.R. Bard, Inc.*, 948 F. Supp. at 608; *see also In re Trasylol Prods. Liab. Litig.* 709 F. Supp. 2d 1323, 1337 (S.D. Fla. 2010) (holding that expert's opinions are improper because they consist of "a summary of [defendant's] internal documents"); *In re Fosamax*, 645 F. Supp. 2d at 192 (rejecting portions of expert report on the ground that the testimony consisted

of "a narrative of the case which a lay juror is equally capable of constructing" and noting if "such evidence is admissible, it should be presented to the jury directly").

To the extent the government wishes to present the documents and information identified in the Notice, they should be admitted through a fact witness not a federal agent cloaked as an expert with the imprimatur of this Court. Her summary of these straight-forward documents does nothing to "help the trier of fact to understand the evidence," and provides an improper semblance of validity and veracity to the government's interpretation. Fed. R. Evid. 702 (a);*United States v. Freeman*, 730 F.3d 590, 599 (6th Cir. 2013) ("An agent presented to a jury with an aura of expertise and authority increases the risk that the jury will be swayed improperly by the agent's testimony, rather than rely on its own interpretation of the evidence."). Such a "naked recitation of facts usurps the role of the finder of fact, whether those facts are properly characterized as objective or not." *Fed. Trade Comm'n v. Vyera Pharms., LLC,* 2021 WL 5403749, at *2 (S.D.N.Y. Nov. 18, 2021); *Green v. Kinney Shoe Corp.*, 715 F. Supp. 1122, 1124 (D.D.C. 1989) (excluding proffered expert testimony that would do no more than identify factual inferences that lay jurors had capacity to identify themselves); *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit [expert] testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.").

## IV. CONCLUSION

For the foregoing reasons, Special Agent Solomon's testimony is inadmissible as expert testimony under Rules 702 and 704.

Dated: July 30, 2024

/s/ George P. Varghese
George P. Varghese
Benjamin Conery
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
George.Varghese@wilmerhale.com *(pro hac vice)*
Benjamin.Conery@wilmerhale.com *(pro hac vice)*

Lee Vartan
Melissa Wernick
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
(973) 325-1500
lvartan@csglaw.com *(pro hac vice)*
mwernick@csglaw.com *(pro hac vice)*

*Counsel for Defendant Michael G. Verzaleno, Jr.*


/s/ Zach Intrater
Zach Intrater
AGNIFILO INTRATER LLP
445 Park Avenue, 7th Fl.
New York, NY 10022
(917)-721-7331
zach@agilawgroup.com (*pro hac vice*)

Bruce L Marcus
Sydney M Patterson
MARCUS BONSIB LLC6411 Ivy Ln Ste 116
Greenbelt, MD 20770
(301) 441-3000
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com

*Counsel for Defendant Michael Verzaleno, Sr.*

/s/ *David M. Eskew*
David M. Eskew
Jarrod L. Schaeffer
ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7340
deskew@aellaw.com *(pro hac vice)*
jschaeffer@aellaw.com *(pro hac vice)*

Evan T. Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410)-244-7742
etshea@venable.com

*Counsel for Defendant Susan P. Carrano*

**CERTIFICATE OF SERVICE**

I certify that, on July 30, 2024, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

                                             /s/ George P. Varghese
                                                  George P. Varghese