# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DKC-23-0323 |
| | * | |
| MICHAEL GEORGE VERZALENO, JR, | * | |
| MICHAEL G. VERZALENO, SR, | * | |
| SUSAN P. CARRANO | * | |
| | * | |
| Defendants. | * | |
| | * | |

*******

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE ANY REFERENCE TO THE FAEGRE DOCUMENTS

The United States of America, by its counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Martin J. Clarke, Harry M. Gruber, and Joseph L. Wenner, Assistant United States Attorneys for said District, hereby files a motion in limine to preclude the Defendants from attempting to admit the results, summary, and/or references of the preliminary internal investigation conducted on an expedited basis in 2020 by Faegre Drinker Biddle & Reath LLP ("Faegre") concerning fraudulent billing at Citrus and Allied Essences Ltd. ("C&A"). This includes precluding any reference to Faegre's May 2020 PowerPoint presentation and letter to the Federal Bureau of Investigation. *See* ECF 67-4 & ECF 67-5.

The Defendant's prior filings falsely asserted that Faegre's work product demonstrates that the Defendants' billing to C&A was lawful. *See* ECF 67 at 4 ("Faegre's investigation found that C&A's purchases from KSC and National Packaging Services, Inc. ('NPS'), both of which are owned by the Verzaleno family, were *legitimate*.") (footnote omitted). In denying the Defendants' motions to dismiss and for a *Franks* hearing, this Court rejected the Defendant's characterization of the investigation and report. ECF 88 at 32 ("it is far from clear that there was any unequivocal 'finding' by the firm's investigators"). This Court should likewise preclude the Defendants from

referring to, or presenting evidence regarding the Faegre investigation, report, FBI presentation, and supporting documents. These materials are irrelevant, prejudicial, and inadmissible.

**Background**

In or about January 2020, C&A engaged Faegre to help the company conduct an internal investigation focused on perceived irregularities in billing for drums delivered to C&A by multiple suppliers. Faegre, in turn, engaged the services of an accounting firm, FTI Consulting ("FTI"). Faegre compared drum vendor invoices against the number of drum containers actually used to ship C&A's flavorings. Faegre identified significant discrepancies in these figures and believed that for years C&A had been paying for drums it never used. The Defendants are all associated with Kearny Steel Container Corp. ("Kearny Steel"), one of six drum vendors that had been doing business with C&A for many years. The Verzalenos owned and managed Kearny Steel at the time, and Susan Carrano was the controller of the company.

In addition to looking at drums used by C&A, Faegre also reviewed selected employee emails with drum vendors. Faegre identified certain suspicious emails between Eugene DiNoto and the owners and employees of several drum companies doing business with C&A. Consistent with its goal of quickly assessing how bad things were and eventually referring the matter to federal law enforcement for full investigation, Faegre focused most of its attention on emails between DiNoto and the owners of just two drum companies: Tunnel and Barrel Drum, Co. ("Tunnel and Barrel") and Hartford Fibre Drum, Inc. ("Hartford"). Some of those emails discussed C&A invoice payments and percentages owed to DiNoto and another C&A employee, Elliot Kleinman, as well as packages being sent to them via FedEx. Faegre also identified a pattern of bank deposits after some of the aforementioned emails. Suspicious email patterns were also identified.

In or about May 2020, Faegre contacted the FBI about the possibility of opening a criminal investigation. C&A provided the FBI with a letter (ECF 67-4) and PowerPoint presentation (ECF 67-5) that summarized the scope of the internal investigation (collectively the "Faegre documents" or "Faegre internal report"). The Faegre documents summarized the law firm's suspicions about a fraud kickback conspiracy involving C&A employees and third-party vendors related to the missing drum containers.

Beyond identifying and calculating the amount of missing drum containers that C&A had paid for, Faegre's findings relied almost exclusively on the frequency and content of select email correspondence between DiNoto and particular vendors, like Tunnel and Barrel, Hartford, and American Pride. Faegre opined that drum vendors that had submitted "email-supported invoices," such as some of those submitted by Kearny Steel, "were likely" "legitimate container purchases." ECF 67-4 at 4. In the last section of Faegre's letter to the FBI titled "The Lack of Emails with Certain Vendors is Suspicious," Faegre opined that more regular email communications with DiNoto, like the ones he had with Kearny Steel, were not suspicious. ECF 67-4 at 11. Whereas the "absence of regular email communications" with certain other drum vendors "adds suspicion about the validity of invoices received from them." *Id*. at 11-12.

## Argument

The Defendants' attempt to rely on and/or introduce the Faegre documents constitutes an improper attempt to abrogate the jury's factfinding function, and instead, rely on a quick and very preliminary analysis conducted by Faegre as opposed to the full picture painted by the evidence at trial. This Court should reject any such attempt by the Defendants. Instead, the parties should place the relevant underlying facts before the jury, through proper evidentiary rules, and then let the jury reach its own conclusions about whether the government has established the Defendants'

guilt. Moreover, because Faegre never purported to conduct an exhaustive and full investigation, references to its presentations, documents, and beliefs would be unduly prejudicial and should be barred by Federal Rule of Evidence 403.

**I.      Admission & Reference To The Faegre Investigation and Documents Would Improperly Supplant The Jury's Role As The Ultimate Finders Of Fact.**

Defendants have referred to the Faegre Documents as purported evidence of their innocence. Doing so at trial is impermissible. Assessing the weight of the evidence and credibility of witnesses is "the near exclusive province of the jury." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016); *see also United States v. Williams*, 232 Fed. Appx. 308, 311 (4th Cir. 2007) ("Determinations of credibility and the weight to be given to evidence is within the province of the jury."); *United States v. Melvin*, 27 F.3d 710, 714 (1st Cir. 1994) (quoting *United States v. Dennis*, 786 F.2d 1029, 1041 (11th Cir. 1986)). Thus, admission of evidence of another factfinder's determination of such an issue would improperly encroach on the jury's well-established and select role.

Accordingly, evidence of prior judgments from outside factfinders – even those such as administrative rulings and prior trials – is generally inadmissible in a criminal trial because such evidence "goes directly to the principal issue and is highly prejudicial." *Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987); *see also Glass v. Anne Arundel Cnty.,* 2015 WL 4619631, at *6 (D. Md. July 30, 2015) (Quarles, J.) ("Courts routinely exclude evidence of acquittals because of the substantial possibility that the evidence may confuse or mislead jurors who lack awareness about the differences between the legal proceedings"); *United States v. Jones*, 808 F.2d 561, 566-67 (7th Cir. 1986) (holding that the defendant's acquittal in state court on the same facts was not admissible in federal trial).

*United States v. Johnson* provides an apt illustration. 2013 WL 6579578 (D. Nev. Dec. 13, 2013). There, in a case charging deprivation of rights under the color of law, the Court excluded an arbitrator's prior decision related to defendant Johnson's use of force against an inmate. The Court reasoned that "the introduction of the arbitrator's ultimate conclusion . . . at the arbitration would only serve to confuse, mislead, or prejudice the jury by suggesting it should arrive at the same conclusion the arbitrator did." *Id.* at *2. Beyond noting that the arbitrator's decision would "not provide anything unique or helpful for the jury's consideration," the Court was concerned that "the jury may find it difficult to independently evaluate the evidence after being informed that the arbitrator has already examined the evidence and concluded the defendant did not commit the acts charged." *Id.*

Such is the case here. Defendants seek to replace the jury's independent analysis of the evidence with the imprimatur of a law firm's summary of preliminary information. In that way, introduction of Faegre's investigation would only serve to supplant the jury's fact-finding role. That is impermissible; the Court should bar this from trial.

**II.  Reference To The Faegre Investigation Would Be Unduly Prejudicial.**

Moreover, even if admission of the Faegre Documents would not risk supplanting the jury's ultimate role, the probative value from the admission of such information is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and the potential to mislead the jury. *See* Fed. R. Evid. 403.

Under F.R.E. 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Courts have found that reports that purport to summarize information "may unduly direct the jury's attention to the

5

information it contains, diminishing proper consideration of other evidence in the case by the jury." *Osterneck v. E.T. Barwick Indus., Inc.*, 106 F.R.D. 327, 334 (N.D. Ga. 1984); *see also English v. D.C.*, 651 F.3d 1, 8-10 (D.C. Cir. 2011) (parts of report concluding that detective violated police use of force policy would be unfairly prejudicial and confuse the jury as to whether victim's constitutional rights were violated); *United States v. Durrani*, 659 F. Supp. 1183 (D. Conn.), *aff'd*, 835 F.2d 410 (2d Cir. 1987) (presidential report was not admissible in prosecution for violations of the Arms Export Control Act; any probative value was substantially outweighed by danger of confusion of the issues or of misleading the jury)

Those concerns are justified here. The Faegre materials were a preliminary analysis of a small slice of available evidence – not the favorable "finding" that Defendants attempt to recast it as. Faegre's review was cabined to C&A employee emails with drum vendors and internal records of drums paid-for and used. Given the limitations of its internal civil inquiry, Faegre fairly couched virtually all of its preliminary findings in less than certain terms. Indeed, the Faegre report is replete with equivocal words and phrases like "likely totaled . . ."; "were likely made through . . ."; "appears to provide insight . . ."; "appear to be fraudulent"; "it is also possible . . ."; "correspondence suggests. . ."; "unlikely"; "suspicious"; and "largely legitimate." ECF 67-4 at 4, 5, 8, 11-12.[1]

---

[1] For the very same reason, the Faegre documents fail to qualify as a business record under F.R.E. 803(6) and should be barred as inadmissible hearsay. That rule requires that hearsay offered as a business record be excluded if "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803. Just so here. Even assuming that the other requirements of F.R.E. 803(6) could be met, a quick investigation into a small portion of available evidence makes for equivocal and uncertain conclusions. *See Bennett v. Saint-Gobain Corp.*, 453 F. Supp. 2d 314, 325 (D. Mass. 2006), *aff'd*, 507 F.3d 23 (1st Cir. 2007), and *aff'd*, 507 F.3d 23 (1st Cir. 2007) (refusing to admit administrative hearing's factual findings as a public record because the incomplete investigation "undermin[ed] the trustworthiness of the findings");

This Court found as much in its decision dismissing Defendants' motion for a *Franks* hearing and suppression of evidence. The Court correctly explained that "it is far from clear that there was any unequivocal 'finding' by the firm's investigators." ECF 88 at 32. Indeed, this Court expressly found that "[t]here was certainly no conclusion that KSC could not have been involved in the fraudulent activity." *Id.*

Just as the "inclusion of tentative preliminary thoughts of whether the KSC invoices were wholly, or only partially, legitimate would not defeat the probable cause present in the affidavit," *id.*, those same "tentative preliminary thoughts" are highly prejudicial to the jury's proper consideration of the Defendants' ultimate criminal liability. *See, e.g.*, *Johnson* 2013 WL 6579578 at *2. Faegre's internal investigation occurred 16 months before the FBI opened its criminal investigation and three years before a Maryland federal grand jury indicted the Defendants. The Government's subsequent investigation greatly expanded upon Faegre's initial foray into the fraud, as explained in the Government's response to Defendants' prior motion. *See* ECF 76 at 16-23 (explaining at length how federal agents served more than eighty grand jury subpoenas on banks, businesses, and government agencies; sixty bank accounts were reviewed; C&A employees were interviewed; DiNoto's computer was searched; tax records were reviewed, etc.). The Faegre Documents provided the Government with a starting point for its criminal investigation, nothing more.

As a result, any reference to the Faegre documents' purported "conclusion that KSC's invoices 'appear to be legitimate'" would be highly prejudicial and that prejudice would far outweigh any probative value from the admission of such information. As explained *supra*, Faegre

---

*Osterneck v. E.T. Barwick Indus., Inc.*, 106 F.R.D. at 332-33 (excluding corporate internal report due to its questionable preparation).

7

made no such conclusion. But even if it did, admitting it into evidence or referencing it before the jury is likely to confuse the jury's understanding of the government's subsequent investigation and the facts properly introduced into evidence at trial. It would taint the jury's ability to independently examine the full body of the government's evidence, and suggest that it should arrive at a "conclusion" based on an initial imperfect examination of the relevant facts. It would be far too prejudicial under Rule 403.

Respectfully Submitted,

Erek L. Barron
United States Attorney

By: /s/_____
Martin J. Clarke
Harry M. Gruber
Joseph L. Wenner
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

This is to certify that on this day, July 30, 2024, a copy of the foregoing filing was electronically filed and delivered via ECF to all counsel of record in this matter.

/s/_____
Joseph L. Wenner
Assistant United States Attorney