UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     *
    *
    *
      v.     *
    *     Criminal No. 23-cr-323-PX
    *
MICHAEL VERZALENO, JR., ET AL.,     *
    *
      Defendants.     *

## MOTION BY DEFENDANTS TO CONTINUE SENTENCING DATE

Defendants Michael G. Verzaleno, Jr., Michael G. Verzaleno, Sr., and Susan P. Carrano (the "Defendants"), by and through their undersigned counsel respectfully move this Court pursuant to Fed. R. Crim. P. 32(b) and Local Rule 213 for an order continuing the sentencing date currently set for February 19, 2025 to allow Defendants to review necessary discovery that the government, again, failed to timely produce. In support of this Motion, Defendants respectfully submit the following.

1.  This case was originally assigned to Judge Chasanow. Her Honor had scheduled trial for September 9, 2024.

2.  On September 6, the Friday before the Monday trial, the government revealed that it had not produced complete Rule 16 discovery. It was not a stray file or two that was missing. Instead, it was tens of thousands of pages of heartland Rule 16 discovery that the government had simply failed to produce. This was after the government had represented to the Court and Defendants that discovery was complete.

3.  Judge Chasanow adjourned the trial to December 2, and the case was transferred to Your Honor.

4.      Notwithstanding the government's previous discovery violations, the government had still not provided all Rule 16 discovery to Defendants on November 5, 2024—just three weeks before the new trial date.  Defendants sent a letter to the government enumerating the missing items on November 5.  *See* Exhibit A.  The most glaring was Eugene DiNoto's cell phone.  As the Court knows, DiNoto is the hub of the conspiracy and the government's chief cooperating witness.

5.      The government failed to respond to Defendants' November 5 letter.  Several weeks later, Defendants entered guilty pleas.  Pursuant to the plea agreements, the government and Defendants agreed that between 2013 and 2020, Defendants overbilled Citrus & Allied approximately $3.5 million, or about $500,000 per year.

6.      The amount of the overbillings was always hotly contested.  There was no clear record of the amount that was overbilled.  The government included a very specific number in the indictment, $9,887,793, but never explained how that number was derived.  Defendants subpoenaed Citrus & Allied for its records, but it too had no loss amount specific to Defendants.  To the contrary, Citrus & Allied's original investigation found no loss attributable to Defendants.  Defendants shared their analysis with the government, which showed a loss considerably less than $3.5 million, but the government refused to accept it (even though it offered no alternative analysis).  Ultimately, the parties agreed to a $3.5 million loss.

7.      Defendants' sentencings were scheduled for February 19, 2025.

8.      On February 4, in advance of the sentencings, Defendants re-sent their November 5 discovery letter to the government asking for a response in advance of the sentencings.  The government ignored the letter.

9.      On February 11, the Court scheduled a conference with the parties to discuss Defendants' adjournment request.  During that conference, Defendants raised the still missing discovery, and the Court directed the parties to meet-and-confer.

10.      Following the call, the parties met, and the government agreed to produce DiNoto's cell phone to Defendants.  It did so begrudgingly, claiming that the phone was irrelevant even though the government conceded it had never looked at the phone and does not know what is on it.

11.      The phone was received by Mr. Verzaleno, Jr.'s counsel on Friday morning. Counsel spent the better part of the day trying to access it, but was unable.  Defendants immediately alerted the government to the problem and asked for the information in a different format.  In a letter filed Sunday evening, the government directed Defendants to purchase a docking device to access DiNoto's phone or, alternatively, wait until Monday morning.  *See* Exhibit B.

12.      Still today, Defendants do not know whether DiNoto used the phone during the conspiracy or after; if he used it after, whether it nevertheless has communications and information contemporaneous with the conspiracy; or how much information is on the phone.  The government does not know either.  *See id.* ("I was told by the case agent that the cell phone taken from DiNoto was not the same one *believed* to have been used during the conspiracy with your client.") (emphasis added).

13.      On Friday, the government also submitted a letter from Citrus & Allied.  In it, Citrus & Allied claims a loss of $5.6 million attributable to Defendants.  Despite innumerable discovery requests to the government, and a subpoena to Citrus & Allied, Defendants first learned of this claimed loss amount a few days before sentencing with no real explanation.

14.     The government's failure to timely produce DiNoto's cell phone and its equally late disclosure of Citrus & Allied's claimed loss, which amount is materially different from the loss amount the government agreed to, requires the sentencings to be adjourned.

15.     Fed. R. Crim. P. 32(b) provides that the Court "must impose sentence without unnecessary delay," but permits adjournment of sentencing deadlines "for good cause."  There is good cause here.  Defendants need DiNoto's phone and more information on Citrus & Allied's claimed loss amount before they can proceed with the sentencings.

16.     It is well established that the government's obligation to disclose evidence favorable to an accused applies to evidence that can impact a defendant's sentencing.  *Brady* itself held that due process is violated when the government fails to provide evidence that "is material either to guilt *or to punishment…*"  *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis added). For decades, courts have consistently applied the government's obligation of disclosure to evidence that is material to determining a defendant's sentence.  *See Cone v. Bell,* 556 U.S. 452, 473, 475 (2009) (holding that "[b]ecause the evidence suppressed at Cone's trial *may well have been material to the jury's assessment of the proper punishment* in this case, we conclude that a full review of the suppressed evidence and its effect is warranted.") (emphasis added); *Basden v. Lee*, 290 F.3d 602, 611 (4th Cir. 2002) ("In *Brady* itself, the Supreme Court expressly stated that its holding applied not only to suppression of materials at the guilt phase of a trial, but also at the punishment phase."); *United States v. White*, 238 F.3d 537, n. 2 (4th Cir. 2001) ("The *Brady* duty extends to evidence that is material to sentencing…"); *United States v. King,* 628 F.3d 693, 704 (4th Cir. 2011) (holding that the defendant "has made a plausible showing that [the witness's] grand jury testimony contained evidence material to his sentence").

17.    Evidence is considered material under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone,* 556 U.S. at 469-470.  For evidence material to punishment, this requires "a reasonable probability that these materials would have yielded a different sentence." *Basden*, 290 F.3d at 613.  As one court has explained about the government's *Brady* obligations at the sentencing phase:

> The Court nevertheless reminds the government of its continuing obligation to disclose favorable and material information to [the defendant] under *Brady* and Rule 16.  Because [the defendant] cannot know with certainty what information the government does and does not have, the government must construe her requests for discovery liberally and resolve all doubts in favor of disclosure.  The government should disclose, for example, any information that casts doubt on the extent to which [the defendant] knew the details of the offenses she helped to conceal, as well as any information that cuts against its claim that she joined the conspiracy with "speed and eagerness."  Finally the government must bear in mind that *Brady*'s materiality standard sweeps more broadly at the sentencing stage because the factors that go into determining a just and appropriate sentence are broader and more numerous than those that go into determining whether a defendant is legally guilty of the crimes charged.

*United States v. Robinson*, 2020 WL 1889178, at *4 (D.N.M.  Apr. 16, 2020).

18.    Here, DiNoto's cell phone most certainly contains evidence material to the Defendants' sentencings.  While without reviewing the contents of the phone it is impossible to know exactly what information is on it that may be material to the sentencings, it is highly likely that it will contain information that is relevant to at least two of the Section 3553(a) factors at issue here: the nature and circumstances of the offense and the need to avoid unwarranted sentencing disparities.  *See* 18 U.S.C. § 3553(a); Dkt. 163 (Sentencing Brief on Behalf of Michael Verzaleno, Jr.).

19.    First, Defendants expect DiNoto's phone could provide communications outlining how the Defendants were actively pursued by DiNoto to join his fraudulent scheme, their reluctance to do so, that Defendants feared the loss of all Citrus & Allied business if they did not

go along with DiNoto, and that the Defendants insisted on continuing to ship real product. Accordingly, the phone will provide important information relating to the nature and circumstances of the offense and Defendants' roles that will likely reduce their sentences.

20.    Defendants expect DiNoto's phone to also contain communications and other information relating to his interactions with the other drum vendors who participated in his fraudulent scheme, such as Anthony Urcioli and his brother, Robert DiNoto.  This evidence will likely show that these other drum vendors exclusively provided false shipments, issued invoices of far greater value than Defendants, and otherwise acted in a more culpable fashion.  Evidence showing the comparable fault among the different participants in DiNoto's fraudulent scheme could lead to a reduction in the sentences of the Defendants here.  *See.* Dkt. 163 at 8.

21.    Where evidence could help reduce the sentence a court imposes, as DiNoto's phone here could, courts have found that evidence to be material.  *See King*, 628 F.3d at 704 (holding that the defendant made a plausible showing that evidence was material where the evidence "would have materially undermined the plausibility of [a witness's] account and thus significantly reduced [the defendant's] sentence"); *United States v. Gregory*, 983 F.2d 1069, 1992 WL 393144, *11-12 (6th Cir. 1992) (holding that "the government withheld material exculpatory information relating to the defendants' punishment," where the government withheld evidence that could have undermined the quantity of drugs involved in the crime, which would have impacted sentencing). DiNoto's cell phone is clearly material evidence that could impact the Defendants' sentencing and should have been disclosed as part of the government's obligations under *Brady*.  Further, the Defendants should have the opportunity to review its contents prior to the Court imposing sentence in this case.

22.    Likewise, Defendants must have an opportunity to understand Citrus & Allied's claimed loss and the methodology used to determine it. The loss claimed by Citrus & Allied is millions of dollars greater than the loss agreed to by the parties. If Citrus & Allied seeks that amount in restitution, which it clearly does, Defendants must have an opportunity to show the Court why that number is wrong. To do so, Defendants need to understand how Citrus & Allied determined its $5.6 million number, and be given sufficient time to rebut it.

23.    Just a few days before the most important day in these prosecutions, Defendants are without the chief cooperator's cell phone and without basic information as to how the victim determined its loss amount and why that amount is so significantly different from the amount determined by the government.

24.    A brief adjournment will provide Defendants with time to adequately prepare for their sentencings and will not prejudice the government.


WHEREFORE, for the foregoing reasons, Defendants Michael G. Verzaleno, Jr., Michael G. Verzaleno, Sr., and Susan P. Carrano, through their undersigned counsel, respectfully request that their sentencings be continued.


Dated: February 17, 2025                 */s/ Lee Vartan*
                                         Lee Vartan
                                         Melissa Wernick
                                         CHIESA SHAHINIAN & GIANTOMASI PC
                                         105 Eisenhower Parkway
                                         Roseland, NJ 07068
                                         (973) 325-1500
                                         lvartan@csglaw.com (*pro hac vice*)
                                         mwernick@csglaw.com (*pro hac vice*)

                                         George P. Varghese
                                         Benjamin Conery

WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
George.Varghese@wilmerhale.com (*pro hac vice*)
Benjamin.Conery@wilmerhale.com (*pro hac vice*)
*Counsel for Defendant Michael G. Verzaleno, Jr.*


/s/ *Zach Intrater*
Zach Intrater
AGNIFILO INTRATER LLP
445 Park Avenue, 7th Floor
New York, NY 10022
(917) 721-7331
zach@agilawgroup.com (*pro hac vice*)

Bruce L Marcus
Sydney M Patterson
MARCUS BONSIB LLC6411 Ivy Ln Ste 116
Greenbelt, MD 20770
(301) 441-3000
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com
*Counsel for Defendant Michael Verzaleno, Sr.*


/s/    *David M. Eskew*
David M. Eskew
Jarrod Schaeffer
ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7340
deskew@aellaw.com
(*pro hac vice*)

Evan T. Shea
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410)-244-7742
etshea@venable.com
*Counsel for Defendant Susan P. Carrano*

**CERTIFICATE OF SERVICE**

I certify that, on February 17, 2025, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve a notification of the filing to the registered parties of record.

/s/ Lee Vartan
Lee Vartan